**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARCUS C. STRICKLAND, JR.,

               Plaintiff,

vs.                                 Case. No. 3:01-cv-908-J-32-HTS

THE UNITED STATES and
GEORGIA-PACIFIC CORP.,

               Defendants.

_____

## <u>ORDER</u>

     This is one of many cases arising from the wildfires that destroyed 500,000 acres of public and private land in central and northeast Florida in the summer of 1998.[1]  Pending is plaintiff Marcus C. Strickland Jr.'s ("Strickland's") motion to amend his first amended complaint (Doc. 127-1) and defendant Georgia-Pacific Corporation's ("Georgia-Pacific's") second motion for summary judgment (Doc.

_____

[1]     In addition to this lawsuit, see <u>Hunter's Ridge Golf Co. v. Georgia-Pacific Corporation</u>, Case No. 3:02-cv-602-J-32-MCR ("Hunter's Ridge"); <u>Hunter's Ridge Golf Co. v. United States</u>, Case No. 3:01-cv-931-J-Alley-MMH; <u>Boice v. United States</u>, Case No. 3:00-cv-1120-J-Alley-TEM; <u>Wheaton v. United States</u>, Case No. 3:01-cv-900-J-Alley-HTS; <u>Wheaton v. Georgia-Pacific Corporation</u>, Case No. 3:02-cv-772-J-Alley-MMH; and <u>Strickland v. State of Florida Department of Agricultural & Consumer Services</u>, Case No. 02-156-CA (Circuit Court in and for Flagler County, Florida).  I allowed the plaintiffs in <u>Hunter's Ridge</u> to intervene here for the limited purpose of filing an opposition brief to Georgia Pacific's second summary judgment motion.  However, I now have determined there is no need to wait for that brief before ruling on the motion.

115).  Each party opposes the other's motion.

Some procedural background is helpful.  This lawsuit began in August 2001 when Strickland filed his complaint against Georgia-Pacific and the United States alleging trespass, unlawful prescribed burn, negligence, and gross negligence. (Doc. 1.)  The complaint concerned what became known as the "Rodeo Road" fire and firefighting activities relating thereto that spanned a 5-day period.  Specifically, Strickland alleged that on or about June 27, 1998, Georgia-Pacific bulldozed over 2¼ miles of his property, thereby felling trees and destroying a dike; that on or about June 28, 1998, Georgia-Pacific started a backfire on its property that bordered Strickland's but did not provide protection to keep it from spreading; that by July 1, 1998, the backfire had spread more than 1½ miles onto Strickland's property; and that on or about July 1, 1998, the United States entered Strickland's property under the premise of helping to control the backfire started by Georgia-Pacific but started other backfires for which it likewise did not provide protection. The complaint alleged that the backfires destroyed 4,000 acres of timber and 200 head of cattle belonging to Strickland.  In July 2002, Strickland filed his first amended complaint solely to add a cause of action for strict liability.

In September 2002, following the close of discovery, Georgia-Pacific and the United States moved for summary judgment, in part on the basis of a Florida statute granting immunity from liability for certain firefighting activities undertaken

-2-

to help the Florida Department of Agriculture and Consumer Services, Division of

Forestry ("FDOF"):

> Forest rangers, employees of [FDOF], and all persons and federal and
> state agencies which are under contract or agreement with [FDOF] to
> assist in firefighting operations as well as persons, federal or state
> agencies, firms, companies, or corporations called upon by forest
> rangers or other authorized employees of [FDOF] to assist in
> firefighting under the direction or supervision of employees of [FDOF]
> may, in the performance of their duties, set backfires, dig trenches, cut
> firelines, and carry on all customary activities in the fighting of forest
> fires without incurring liability to any person.

Fla. Stat. §590.02(3)(1997).  In support of its motion for summary judgment,

Georgia-Pacific filed affidavits of Richard "Bud" Mauldin ("Mauldin"), a former

Georgia-Pacific employee, and Michael Kuypers ("Kuypers"), an FDOF district

manager, as well as Strickland's deposition transcript.  Mauldin and Kuypers

averred that Georgia-Pacific's actions described in the first amended complaint - -

the June 27 bulldozing and the June 28 backfire - - were undertaken as part of a

strategic firefighting plan, and with the agreement and approval, of the North

Carolina Division of Forestry ("NCDOF") incident management team assigned by

FDOF to manage the Rodeo Road fire.

In opposition to the summary judgment motion, Strickland filed deposition

transcripts of Mauldin and Kuypers, as well as those of Philip Parker ("Parker"),

another former Georgia-Pacific employee, Charles Wood ("Wood"), an NDOF

ranger, Thad Dimmers ("Dimmers"), a local firefighter, and Brian Boice ("Boice"), a

nearby property owner.  Strickland argued that, in addition to the actions alleged in

the first amended complaint, Georgia-Pacific started a backfire in a separate area

of its property known as "Iron Slough" on June 29, 1998.  According to Strickland:

> It is questionable as to whether [Georgia-Pacific] was called upon by
> the State to assist or whether [Georgia-Pacific] simply informed the
> State of what it intended to do on its own private property.  It is much
> clearer, however, that the State did not direct, and in fact was not
> even aware at the time, that [Georgia-Pacific] set fire to Iron Slough.
> GP may have assisted the State with its burnout plan when it
> bulldozed and set backfires on its property bordering Strickland
> property.  But [Georgia-Pacific] activities in Iron Slough, which is
> approximately one mile from the Strickland dike, is private [Georgia-
> Pacific] property, which were performed using only [Georgia-Pacific]
> equipment and personnel, and of which the State was not aware,
> cannot be afforded protection under the Statute.

(Doc. 63 p. 5.)

In response to this opposition, Georgia-Pacific moved for and was granted

permission to reply to what it called, "a new factual basis for [Strickland's] claims

that is not within the scope of the allegations" of the first amended complaint and to

"provide critical, relevant, and unrebutted record evidence establishing that [the

Iron Slough] backfire was authorized."  (Doc. 65 ¶2.)  In its reply, Georgia-Pacific

pointed to deposition testimony that it believed supported its position that NCDOF

authorized the Iron Slough backfire.

In August 2004, the predecessor judge assigned to this lawsuit, the

Honorable Wayne E. Alley, granted summary judgment in favor of the United

States on all of Strickland's claims, granted summary judgment in favor of Georgia-

Pacific on Strickland's statutory prescribed burn, gross negligence, and emotional

distress damages claims, but denied summary judgment to Georgia-Pacific on

Strickland's negligence, trespass, and strict liability claims.  Judge Alley concluded

that a factual issue remained as to whether Georgia-Pacific was statutorily immune

from liability:

> Mr. Strickland concedes that members of ... [NCDOF] met with
> Georgia-Pacific's representatives and developed a plan for Georgia-
> Pacific to bulldoze Mr. Strickland's dike and to assist in conducting a
> burnout of lands affecting his property. ...  Under the statute ...
> Georgia-Pacific is protected from liability to Mr. Strickland for
> firefighting activities undertaken as part of this strategic plan,
> regardless [of] whether Georgia-Pacific's employees or agents may
> have acted negligently and without Mr. Strickland's permission.  While
> assisting in the coordinated effort to combat Florida's wildfires,
> Georgia-Pacific was protected from judicial scrutiny of particular
> firefighting decisions ...
>
> On the other hand, Mr. Strickland presents facts and evidence that
> draw into question whether all of Georgia-Pacific's activities affecting
> his property were undertaken in the performance of the firefighting
> plan to assist the incident management team ... .  The Court finds on
> the record presented that genuine issues of material facts preclude
> summary judgment to Georgia-Pacific based on its statutory immunity
> from suit under Section 590.02(3).

 (Doc. 70 p. 3-4.)

In September 2004, Georgia-Pacific moved for reconsideration, but

thereafter withdrew the motion and instead moved for clarification, asking whether

Judge Alley's order meant that Georgia-Pacific was immune from liability for

actions described in the first amended complaint - - the June 27 bulldozing and the

-5-

June 28 backfire.  In January 2005, having been reassigned to the case, I clarified

Judge Alley's order by stating that "genuine issues of material fact exist as to

which of Georgia-Pacific's firefighting activities were undertaken as part of the

incident management team's strategic firefighting plan.  [Judge Alley's order] made

no conclusions as to whether Georgia-Pacific's activities in bulldozing the canal

bank and igniting the backfire on June 28, 1998 were part of the plan."  (Doc. 87

p.6.)  In February 2005, I entered a new case management and scheduling order

setting new discovery and dispositive motion deadlines, now passed, as well as a

new jury trial term of November 2005.

This brings me now to Strickland's pending motion to amend his first

amended complaint and Georgia-Pacific's pending second motion for summary

judgment.  I will address each in turn.

Strickland seeks to amend his first amended complaint by adding factual

allegations about the Iron Slough backfire and other alleged backfires.  The

proposed second amended complaint maintains the original allegations regarding

the June 27 bulldozing and the June 28 backfire, but adds that "on or about June

29 and/or 30, 1998, [Georgia-Pacific] started other fires in the nature of a

prescribed burn on its property, at least one of which was in ... Iron Slough, west of

where it had started a fire on June 28, 1998."  (Doc. 127-2 ¶¶ 10, 17, 26-27, 32-33,

36, 39, 42-43, 48-49, 55-56, 63-64, 73-74, 77, 86-87.)  Strickland says that his

discovery of additional facts necessitates the amendments.  Georgia-Pacific says

that any such amendments would be futile in that Georgia-Pacific is entitled to

statutory immunity for the firefighting activities it undertook on June 29; that

allegations regarding any June 30 backfire do not relate back and are barred by

the applicable statute of limitations; and that Strickland's delay in requesting

amendment was unreasonable and would cause Georgia-Pacific prejudice.

Georgia-Pacific says Strickland is attempting to add "what amounts to an entirely

new theory of liability" that essentially would require the case to "start over from the

beginning."  (Doc. 130 p. 5.)

While it is true that the original and first amended complaints went beyond

Fed.R.Civ.P. 8(a) notice pleading by setting forth specific dates and factual

allegations, this did not keep the parties from engaging in more expansive

discovery covering actions taken by FDOF, NCDOF, Georgia-Pacific, and

Strickland in fighting the Rodeo Road fire during late June and early July 1998.

Moreover, it should come as no surprise to Georgia-Pacific that Strickland is

asserting liability for the Iron Slough backfire since he raised such liability in his

opposition to the first summary judgment motion, to which Georgia-Pacific filed a

reply that included deposition testimony about the Iron Slough backfire.  And,

Judge Alley's summary judgment order found factual issues concerning "whether

all of Georgia-Pacific's activities affecting [Strickland's] property were undertaken

in the performance of the firefighting plan to assist the incident management team." (Doc. 70 p.4.)  I see Strickland's second amended complaint not as an attempt to add new claims but, rather, as an effort to conform his pleadings to the evidence that has been discovered.  As such, and without finding any real prejudice to Georgia-Pacific, I will grant Strickland leave to file his second amended complaint.  See  Fed.R.Civ.P. 15(a).

Georgia-Pacific's second summary judgment motion, like its first, is based on Florida's immunity statute, but now Georgia-Pacific submits new and recent affidavits of Wood, Mauldin, Kuypers, and Lee Burwell, an NDOF regional manager.  These affiants, who all but Burwell were deposed before the first summary judgment motion, say generally that all of Georgia-Pacific's firefighting efforts were part of the incident management team's strategic plan, were authorized and approved by the incident management team, were customary firefighting tactics, were consistent with the tactics of other members of the incident management team, and "were otherwise similarly approved by" the incident management team.  (See Wood Aff. ¶¶ 10-12;  Mauldin Aff. ¶¶ 9, 11; Kuypers Aff. ¶¶ 10-11; Burwell Aff. ¶¶ 10, 12-13.)  Kuypers and Burwell further say that Georgia-Pacific was acting as a "landowner cooperator" at all times.  (Kuypers ¶ 13; Burwell ¶ 14.)

In opposition, Strickland says, "the only discernable difference between this

motion and the [first summary judgment motion and clarification motion] is that [Georgia-Pacific's] affiants have added specific dates to their otherwise conclusory testimony as to what may or may not have been authorized by the State in late June 1998.  Specifically, [Georgia-Pacific's] affiants now recall, seven years after the event and what they did not recall in earlier testimony, that direction was given to [Georgia-Pacific] to set backfires on June 28 and 29, 1998."  (Doc. 124-1 pp. 2-3.)  Strickland offers an FDOF investigative report and an expert affidavit in support of his position that Georgia-Pacific set an unauthorized backfire in Iron Slough on June 30, the same night FDOF allegedly declined to set a backfire in the area because of poor weather conditions.

Georgia-Pacific already has argued for summary judgment on claims encompassing the Iron Slough backfire; as such, its second summary judgment motion appears to be an attempt to take a second bite at the apple.  As indicated in my clarification order, a successor judge like me should be very reluctant to reexamine rulings made by a predecessor judge.  See Bullock v. Widnall, No. CIV.A.95-W-1031-N, 1997 WL 1876544, at *5 n.9 (M.D. Ala. Aug. 12, 1997)("[A] successor judge should feel more reluctant to reexamine rulings by a predecessor than his own earlier rulings. ...  [L]itigants have a right to expect that a change in judges will not mean going back to square one.") (quotations omitted).  Moreover, the testimony of the affiants should be evaluated by the fact-finder.  Of course,

-9-

Georgia-Pacific's statutory immunity defense could relieve it of any and all liability if the facts play out as Georgia-Pacific hopes.  If this is the case, Georgia-Pacific may renew its position through an appropriate motion at the close of Strickland's case or all the evidence.[2]

It is hereby **ORDERED**:

1.    Plaintiff Marcus C. Strickland Jr.'s Motion to Amend Complaint (Doc. 127-1) is **GRANTED**.  Plaintiff shall file separately the Second Amended Complaint and Demand for Jury Trial (127-2) currently attached to its motion.  Georgia-Pacific shall have up to and including **September 23, 2005**, to file an answer thereto.

2.    Defendant Georgia-Pacific Corporation's Motion for Summary Judgment (Doc. 115) is **DENIED**.

3.    Intervenors Hunter's Ridge Golf Co., Inc., Hunter's Ridge Residential Golf Properties, Inc. and Hunter's Ridge Timber Co., Inc.'s Motion for Clarification and for Extension of Time (Doc. 132) is **DENIED** as moot.

4.    The mediator, Terrence White, is requested to advise the Court of

---

[2]    Georgia-Pacific filed a recent order in the lawsuit Strickland filed in state court against the State of Florida, Department of Agriculture & Consumer Services ("DACS"), that granted summary judgment in favor of DACS based on the Florida immunity statute.  I do not find this order particularly relevant here since it involved a governmental entity and not a private defendant.  Judge Alley likewise granted summary judgment to a government actor, the United States, based on a different section of the Florida immunity statute while denying the same to a private actor, Georgia-Pacific.

-10-

the results of the mediation that was scheduled for June 16, 2005.

   **DONE AND ORDERED** at Jacksonville, Florida, on August 30, 2005.


TIMOTHY J. CORRIGAN
United States District Judge

p.

Copies to:

Counsel of record
Paul S. Rothstein
Terrence M. White